UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BEAU LEDOUX                                                    CIVIL ACTION

VERSUS                                                         NO. 22-4341

TIM HOOPER, WARDEN                                             SECTION: "G"(1)

REPORT AND RECOMMENDATION

Petitioner, Beau Ledoux, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On May 15, 2014, petitioner was convicted under Louisiana law of five counts of aggravated kidnapping, four counts of armed robbery using a firearm, and one count of attempted armed robbery using a firearm.[1] On June 19, 2014, he was sentenced to concurrent terms of imprisonment as follows: on each of the aggravated kidnapping convictions, life imprisonment; on each of the armed robbery convictions, fifty years plus an additional consecutive five-year sentencing enhancement for the use of a firearm; and on the attempted armed robbery conviction, twenty-five years plus an additional consecutive five-year sentencing enhancement for the use of a firearm. It was ordered that all sentences be served without benefit of probation, parole, or suspension of sentence.[2] On July 17, 2014, petitioner was then found to be a second offender and was resentenced as such on each of the armed robbery convictions to sixty years and on the attempted armed robbery conviction to thirty-five years, again with all sentences to be served

---

[1] State Rec., Vol. 2 of 8, transcript of May 15, 2014; State Rec., Vol. 1 of 8, minute entry dated May 15, 2014; State Rec., Vol. 1 of 8, jury verdict forms.
[2] State Rec., Vol. 1 of 8, minute entry dated June 19, 2014.

without benefit of probation, parole, or suspension of sentence.[3]  The Louisiana First Circuit Court of Appeal affirmed those convictions, sentences, and habitual offender adjudications on April 24, 2015,[4] and denied petitioner's related application for rehearing on May 14, 2015.[5]  The Louisiana Supreme Court then denied his related writ application on May 20, 2016.[6]

Petitioner thereafter filed various motions and applications requesting production of documents, the appointment of an investigator, and the appointment of counsel to assist him with the preparation of a post-conviction application.  He was provided with some (but not all) of the documents he requested, but his motions and applications were unsuccessful in all other respects.[7]

On April 8, 2018, petitioner filed with the state district court an application for post-conviction relief,[8] and he then later supplemented that application.[9]  The district court denied relief.[10]  Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on October 12, 2020,[11] and March 2, 2021,[12] and by the Louisiana Supreme Court on September 27, 2021.[13]

---

[3] State Rec., Vol. 2 of 8, transcript of July 17, 2014; State Rec., Vol. 1 of 8, minute entry dated July 17, 2014.
[4] State v. Ledoux, No. 2014 KA 1365, 2015 WL 1915274 (La. App. 1st Cir. Apr. 24, 2015); State Rec., Vol. 4 of 8.
[5] State v. Ledoux, No. 2014 KA 1365 (La. App. 1st Cir. May 14, 2015); State Rec., Vol. 3 of 8.
[6] State v. Ledoux, 191 So. 3d 1064 (La. 2016); State Rec., Vol. 4 of 8.
[7] See State Rec., Vol. 5 of 8.
[8] State Rec., Vol. 5 of 8, Application for Post-Conviction Relief.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a pro se prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).  That date is not apparent from the state court record with respect to this post-conviction application, and petitioner failed to date the application.  However, he states in his federal application that the post-conviction application was filed on April 8, 2018. See Rec. Doc. 1-1, p. 4.  For the purposes of this decision, the undersigned will accept that representation as true, especially given the fact that the application was stamped by the clerk of court as having been filed one day later, on April 9, 2018. See State Rec., Vol. 5 of 8, Application for Post-Conviction Relief.
[9] State Rec., Vol. 5 of 8, Supplemental Memorandum to Application for Post-Conviction Relief.
[10] State Rec., Vol. 5 of 8, Reasons for Denying Post-Conviction Relief Application dated July 8, 2020.
[11] State v. Ledoux, No. 2020 KW 0688, 2020 WL 6018970 (La. App. 1st Cir. Oct. 12, 2020); State Rec., Vol. 5 of 8.
[12] State v. Ledoux, No. 2020 KW 1273, 2021 WL 798529 (La. App. 1st Cir. Mar. 2, 2021); State Rec., Vol. 5 of 8.
[13] State v. Ledoux, 324 So. 3d 80 (La. 2021); State Rec., Vol. 8 of 8.

On or after November 16, 2021, petitioner filed the instant federal application seeking habeas corpus relief in the United States District Court for the Middle District of Louisiana.[14] He then paid the required filing fee in February of 2022, and the case was eventually transferred to this Court in October of 2022. Shortly thereafter, the state was ordered to respond to the application. On January 6, 2023, the state filed an answer arguing that the application should be dismissed as untimely.[15] Petitioner filed replies.[16]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[14] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). That date is not apparent from the application. However, petitioner signed the application on November 16, 2021, see Rec. Doc. 1, p. 5, and so that is the earliest date it could have been delivered to prison officials for forwarding to federal court.
[15] Rec. Doc. 12.
[16] Rec. Docs. 14 and 16.

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not argue that Subsection B, C, or D is applicable here. Accordingly, Subsection A controls, and so his federal limitations period commenced on the date his state judgment became final.

With respect to determining that date of finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Therefore, petitioner's state criminal judgment became final for federal purposes on August 18, 2016, i.e. ninety days after the Louisiana Supreme Court denied his direct-review writ application on May 20, 2016.[17] Accordingly, his period for seeking federal habeas corpus relief commenced on that date and then expired one year later on **August 18, 2017**, unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the limitations period set forth in § 2244(d)(1), federal law expressly provides: "The time during which a properly filed application

---

[17] State v. Ledoux, 191 So. 3d 1064 (La. 2016); State Rec., Vol. 4 of 8.

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).  But that provision is subject to a significant limitation:  it does not apply to every type of post-conviction filing; rather, it "applies **only** to those state post-conviction filings that **seek reexamination of the relevant state-court conviction or sentence**."  Wall v. Kholi, 582 F.3d 147, 151 (1st Cir. 2009) (emphasis added), aff'd, 562 U.S. 545, 553 (2011).  See also Brian R. Means, Federal Habeas Manual § 9A:74 (May 2022 Update) ("[A] state court application that does not seek judicial review of a judgment or provide the state court with authority to order relief from a judgment generally will not toll the limitations period.").

Here, petitioner had no such applications pending in the state courts during his one-year period.  Instead, his only state court filings during that one-year period were his various motions and applications requesting production of documents, the appointment of an investigator, and the appointment of counsel to assist him with the preparation of a post-conviction application.  Those motions and applications did not seek such reexamination of his convictions or sentences; rather, they were merely preliminary steps taken in preparation of an **anticipated filing** which would seek such a reexamination at some indeterminate time in the future.  See, e.g., Wall v. Kholi, 562 U.S. 545, 556 n.4 (2011) (noting that "a motion for post-conviction discovery or a motion for appointment of counsel … generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment"); Earl v. Goodwin, Civ. Action No. 22-962, 2022 WL 4281905, at *6 (E.D. La. Aug. 31, 2022) (noting that motions for production of documents do not trigger § 2244(d)(2) because they "are considered preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence"),

adopted, 2022 WL 4485162 (E.D. La. Sept. 27, 2022); Dean v. Vannoy, Civ. Action No. 21-1482, 2022 WL 1251570, at *3 n.17 (E.D. La. Apr. 5, 2022) (making the same observation with respect to motions for appointment of counsel to assist with the preparation of a post-conviction application), adopted, 2022 WL 1238625 (E.D. La. Apr. 27, 2022).

Of course, on April 8, 2018, petitioner finally did file an application for post-conviction relief seeking reexamination of his convictions. However, that application is of no consequence under § 2244(d)(2), because petitioner's federal limitations period had already expired some seven months earlier on August 18, 2017. Pleadings filed in the state courts after the expiration of the federal statute of limitations simply have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). That is so because once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

For all of these reasons, petitioner is not entitled to statutory tolling.

The Court next considers equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "equitable tolling is unavailable in most cases …." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Indeed, the Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2)

some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted).  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).  In the instant case, petitioner advances several arguments as to why he should be granted equitable tolling.

For example, petitioner alleges that he lacked "sufficient education" and "legal knowledge" and so had to rely on an "Offender Counsel Substitute" for legal assistance.[18]  However, it is clear that a prisoner's pro se status, lack of legal training, ignorance of the law, and reliance on inmate counsel do not constitute rare and exceptional circumstances warranting equitable tolling.  See, e.g., Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002) ("[N]either 'excusable neglect' nor ignorance of the law is sufficient to justify equitable tolling."); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) ("[P]roceeding pro se is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim."); Smallwood v. Cain, Civ. Action No. 12-2812, 2013 WL 5757663, at *10 (E.D. La. Oct. 23, 2013) ("The fact that Smallwood is not educated in the law or is reliant upon assistance from inmate counsel on post-conviction does not warrant equitable tolling.  In fact the United States Fifth Circuit has held that circumstances such as lack of legal assistance in preparing post-conviction pleadings, ignorance of the law, lack of knowledge of filing deadlines, and temporary denial of access to or inadequacy of research materials or a prison law library are not sufficient to warrant equitable tolling." (citations omitted)).

---

[18] Rec. Doc. 14, pp. 3-4; Rec. Doc. 16, pp. 3-4.

Petitioner also argues that his state court filings were timely.[19] But that is immaterial. Louisiana's limitations period for post-conviction filings is **two** years, see La. Code Crim. P. 930.8, while, as already explained herein, the federal limitations period is only **one** year. And a petitioner's mistaken reliance on the longer two-year limitations period under state law is not an extraordinary circumstance warranting equitable tolling of the shorter one-year federal limitations period. See, e.g., Puderer v. Vannoy, Civ. Action No. 17-324, 2018 WL 1319023, at *8 (E.D. La. Jan. 26, 2018), adopted, 2018 WL 1287621 (E.D. La. Mar. 13, 2018), certificate of appealability denied, No. 18-30461, 2019 WL 11866564 (5th Cir. Feb. 12, 2019).

Lastly, although he does not specify which ruling he is referencing, petitioner alleges that he was not made aware of a Louisiana Supreme Court ruling in his case "for several months."[20] It is clear that, in some circumstances, "[l]ong delays in receiving notice of state court action may warrant equitable tolling." Hardy v. Quarterman, 577 F.3d 596, 598 (5th Cir. 2009). Here, however, equitable tolling is not warranted on that basis for the following reasons.

As an initial matter, it must be noted that petitioner has offered no actual proof, such as prison mail logs, in support of his allegation that he experienced a delay in receiving any Louisiana Supreme Court ruling. That is problematic, given that he bears the burden of proof on such matters. See, e.g., Moore v. McCain, Civ. Action No. 18-13611, 2019 WL 9197582, at *4 (E.D. La. Oct. 29, 2019), adopted, 2020 WL 3577499 (E.D. La. July 1, 2020). And, in any event, as explained below, even if he had presented supporting evidence, equitable tolling still would not be warranted in this case.

---

[19] Rec. Doc. 14, p. 4; Rec. Doc. 16, p. 4.
[20] Rec. Doc. 14, p. 3; Rec. Doc. 16, p. 3.

8

If petitioner is alleging that he did not receive notice of the Louisiana Supreme Court's denial of his **direct-review** writ application "for several months," that delay in no way "prevented" him from seeking federal relief in a timely manner. As noted, the Louisiana Supreme Court denied that writ application on May 20, 2016.[21] For the reasons already explained, petitioner's one-year federal limitations period then did not even begin running until three months later, i.e. on August 18, 2016, upon the expiration of his time for seeking review by the United States Supreme Court. As a result, his federal limitations period did not expire until **August 18, 2017**, a full **fifteen months** after the Louisiana Supreme Court issued its direct-review judgment. Accordingly, even if this Court accepts as true petitioner's uncorroborated allegation that he did not receive that judgment until "several months" after it was issued, he would still have received it in ample time to seek federal relief in a timely manner if he had acted with any degree of diligence and alacrity. He did not, and that dooms his argument, because "[e]quitable tolling should only be applied if the applicant diligently pursues § 2254 relief." Melancon v. Kaylo, 259 F.3d 401, 408 (5th Cir. 2001). Simply put: "Those who sleep on their rights are not entitled to equitable tolling." Diggs v. Vannoy, 840 F. App'x 779, 781 (5th Cir. 2021) (quotation marks omitted).

On the other hand, if petitioner is alleging that he did not receive notice of the Louisiana Supreme Court's denial of his **collateral-review** writ application "for several months," that would contradict his earlier allegation in his federal application.[22] Moreover, it would not matter regardless. As noted, petitioner did not even begin seeking collateral review in the state courts

---

[21] State v. Ledoux, 191 So. 3d 1064 (La. 2016); State Rec., Vol. 4 of 8.
[22] In his application, petitioner stated: "The Louisiana Supreme Court denied Petitioner relief on September 27, 2021. Petitioner received the ruling of the Louisiana Supreme Court on or about September 29, 2021, through the Louisiana State Penitentiary legal mail delivery system, signing for same in accordance with penitentiary rules and procedure." Rec. Doc. 1-1, p. 4. See also Rec. Doc. 14, p. 3; Rec. Doc. 16, p. 3.

until after his federal limitations period had already expired. Therefore, any delay in receiving the Louisiana Supreme Court's collateral-review ruling would be wholly immaterial in this federal proceeding, because equitable tolling is unavailable for an alleged "exceptional circumstance" that did not arise until after the federal limitations period had already expired. See, e.g., Radke v. Quarterman, 246 F. App'x 269, 270 (5th Cir. 2007) ("As the statute of limitations expired before Radke filed his state habeas application, the issue whether he should receive equitable tolling because of his failure to receive timely notice of the denial of his state habeas application is irrelevant."); Hines v. Kent, Civ. Action No. 18-10234, 2020 WL 1030848, at *4 (E.D. La. Mar. 3, 2020); Hall v. Vannoy, Civ. Action No. 18-5968, 2019 WL 13246671, at *5 (E.D. La. July 26, 2019), adopted, 2019 WL 13246628 (E.D. La. Aug. 28, 2019); Lookingbill v. Johnson, 242 F. Supp. 2d 424, 435 (S.D. Tex. 2000).

Because petitioner has failed to establish that equitable tolling is warranted on any of the foregoing bases, because he has advanced no other bases, and because no bases are otherwise apparent from the record, the Court should not equitably toll the federal limitations period in this case.

Finally, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013). In Perkins, the United States Supreme Court held:

> This case concerns the "actual innocence" gateway to federal habeas review applied in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and further explained in House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). In those cases, a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. Here, the question arises in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in the Antiterrorism and Effective Death Penalty Act of 1996. Specifically, ... can the

> time bar be overcome by a convincing showing that [the petitioner] committed no crime?
>
> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851; see House, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the Schlup standard is "demanding" and seldom met).

Perkins, 569 U.S. at 386.

In the instant case, petitioner has not invoked Perkins. However, in the event he does so in any objections to this Report and Recommendation, the undersigned finds that he has not made the showing required under Perkins for the following reasons.

In assessing a claim of actual innocence, a court normally first examines the evidence presented at trial and on which the petitioner's conviction was based. See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014). In the instant case, petitioner was convicted of five counts of aggravated kidnapping,[23] four counts of armed robbery using a firearm,[24] and one count of attempted armed robbery using a firearm.[25] The Louisiana First Circuit Court of Appeal summarized the evidence regarding those offenses as follows:

> Dr. Mario Zelaya owned a home in River Oaks Subdivision in Covington. In May of 2013, Dr. Zelaya had several relatives from Nicaragua and Honduras living with him, namely, Maria Reina, Andrea Mendoza, nine-year-old J.T., Suzanna Zelaya and Martin Amaya. Maria, Andrea, and J.T. were cousins; J.T.

---

[23] See La. Rev. Stat. Ann. § 14:44.
[24] See La. Rev. Stat. Ann. § 14:64.
[25] See La. Rev. Stat. Ann. §§ 14:27 and 14:64.

11

was Suzanna's son, and Suzanna and Martin were Maria's and Andrea's aunt and uncle. On the morning of May 4, 2013, all five of these people were at Dr. Zelaya's house while the doctor, himself, was not home. At about 9:15 a.m., Andrea, who was going somewhere with her aunt that day, went to the garage to put some things in the car. Andrea noticed the laundry room door nearby was wide open. When she approached the room to look inside, defendant and Jonathan Hudson, both armed with guns, confronted her. They pointed their guns at Andrea's head and told her to cooperate or they would kill her. The defendant and Hudson were wearing jeans, dark shirts, and "homemade" masks made from T-shirts. They had black "face paint" around the eyes and wore gloves. They forced Andrea back into the house and into the master bedroom, which was downstairs. Martin, who was already in the master bedroom, was also subdued by the perpetrators. One of the perpetrators seized J.T. from the living room, while the other perpetrator seized Suzanna as she was coming out of the bathroom. The person who had grabbed J.T. then went upstairs and seized Maria, who was in a bedroom. All of the captives were brought to the master bedroom. Defendant and Hudson forced their victims on the floor and tied up their hands and feet with zip-ties and rope. The feet of Maria, Andrea, and J.T. were all bound together. Martin was hog-tied (his wrists were tied to his ankles).

   Defendant had been told days before by someone he knew that there were "a couple million" dollars in the house. Defendant and Hudson demanded this money from their captives, but were told there was no money in the house. They threatened to rape the females if they were not given the money. One perpetrator stayed with the victims while the other went throughout the house, including the attic, looking for money. When they did not find any money, they took all of the cash directly from their victims. They also took jewelry, Rolex watches, cell phones, and prescription medication (pills). They also took several guns, long and short, from a gun safe in the garage, which they were able to open after having demanded the combination from Suzanna. They put the stolen items in a suitcase. They found two sets of car keys in the house. Defendant and Hudson used one of those sets of keys to take the black Mercedes SUV that was in Dr. Zelaya's driveway. Maria managed to get loose from her constraints. She retrieved a knife and freed the rest of her family. Defendant and Hudson drove to a parking lot at Boh Bros. Construction Co., where they were picked up by a friend, Jennica Keebler. Before leaving, they splashed bleach all over the interior of the SUV and left it in the parking lot.

   About four weeks later, based on the ongoing investigation of these crimes, the police determined that defendant was a prime suspect and took him in for questioning. Within a few hours of being interviewed, defendant confessed to robbing the family at the home in River Oaks Subdivision. Defendant provided a detailed account of what he and Hudson did and what they took. At trial, Andrea testified that, despite defendant's face being covered, she got a long look at his eyes when she first encountered him in the laundry room. She testified that defendant had almond-shaped "greyish-blue" eyes, and that he had "really, really rare eyes."

> Andrea was allowed to approach defendant in court. She identified defendant as one of the perpetrators in the house.
> Defendant did not testify at trial.[26]

At the next step of an "actual innocence" analysis, a federal court then considers the **new** evidence of actual innocence offered by the habeas petitioner. Specifically, the United States Supreme Court has explained that, in order to assert a credible claim of actual innocence, a petitioner is required "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Here, however, petitioner has presented no new evidence of any kind. Without such evidence, he simply cannot meet even "the threshold requirement" for Perkins to apply, i.e. a showing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Perkins, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329). Accordingly, Perkins does not aid him.

In summary: Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the Perkins "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than **August 18, 2017**, in order to be timely. Because his application was filed on or after **November 16, 2021**, it was untimely by more than **four years**.

---

[26] State v. Ledoux, No. 2014 KA 1365, 2015 WL 1915274, at *2-3 (La. App. 1st Cir. Apr. 24, 2015); State Rec., Vol. 4 of 8.

### RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Beau Ledoux be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 22nd  day of February, 2023.

*(signature)*
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**